**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**5:12-cv-145-RLV**
**(5:09-cr-15-RLV-DCK-2)**

| | | |
|---|---|---|
| ROBERTO EZEQUEL VILLARREAL-MEZA, | ) ) ) | |
| Petitioner, | ) ) | |
| | ) | **ORDER** |
| vs. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) | |
| _____ | ) | |

     **THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Response to Petitioner's Motion to Vacate, (Doc. No. 8).

## I.  BACKGROUND

### A.  Offense Conduct

     Beginning in 2005, federal investigators initiated a wiretap investigation into a drug trafficking organization headed by Olegario Chaidez Villareal.  (Crim. Case No. 5:09-cr-15, Doc. No. 147 at 5: PSR).  The Chaidez organization was responsible for importing large quantities of narcotics from Mexico to the United States for distribution.  (Id.).

     Petitioner was one of two leaders operating a cell of the Chaidez operation in Hickory, North Carolina.  (Id.).  Petitioner and his coconspirators received shipments of marijuana and cocaine

from Mexico, which they stored in stash houses and warehouses before distributing the drugs throughout North Carolina. (Id.). From 2007 through 2008, investigators gathered evidence of Petitioner's drug trafficking activities through wiretaps, surveillance, and witness interviews. (Id. at 5-9). During a search of one of the stash houses controlled by Petitioner's group, investigators found thirteen kilograms of cocaine, a 9mm semiautomatic pistol, a .38 super caliber pistol, scales, cell phones, records of drug trafficking, and $169,639 in cash. (Id. at 7).

**B. Procedural History**

On February 18, 2009, the Grand Jury for the Western District of North Carolina charged Petitioner, along with eight codefendants, with conspiracy to possess with intent to distribute five or more kilograms of powder cocaine, one thousand or more kilograms of marijuana, and a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A), (C) and 846; possession with intent to distribute one hundred or more kilograms of marijuana and aiding and abetting the same, in violation of 21 U.S.C. § 841(b)(1)(B) and 18 U.S.C. § 2; possession with intent to distribute five or more kilograms of powder cocaine and aiding and abetting the same, in violation of 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 2; and possession with intent to distribute five hundred grams or more of powder cocaine and aiding and abetting the same, in violation of 21 U.S.C. § 841(b)(1)(B) and 18 U.S.C. § 2. (Id., Doc. No. 147 at 4). On April 29, 2010, Petitioner pled guilty, pursuant to a plea agreement, to the drug conspiracy charge. (Id., Doc. No. 162: Judgment; Doc. No. 194: Tr. of Plea and Rule 11 Hrg.). In exchange, the Government agreed to dismiss the remaining counts. (Id., Doc. No. 194 at 9). The parties also agreed to jointly recommend that the amount of drugs known or reasonably foreseeable to Petitioner was between five and fifteen kilograms of powder cocaine. (Id.).

In preparation for sentencing, the probation officer prepared a presentence investigation report, recommending an advisory guidelines range of 108 to 135 months in prison based on a total offense level of 31 and a criminal history category of I. (Id., Doc. No. 147 at 13). In calculating Petitioner's offense level, the probation officer found that Petitioner was responsible for thirteen kilograms of powder cocaine and applied a two-level enhancement for possession of a firearm during the course of the conspiracy. (Id. at 10). The probation officer also noted that Petitioner faced a statutory mandatory minimum of ten years in prison under 21 U.S.C. § 841(b)(1)(A) because, as alleged in the indictment, the offense involved more than five kilograms of powder cocaine. (Id.). Thus, because Petitioner was subject to a mandatory statutory minimum of sentence of ten years, the guidelines range was 120 to 135 months in prison. (Id.).

Before sentencing, Petitioner objected to the application of the firearm enhancement. (Id. at 16). At Petitioner's sentencing hearing, the Government agreed that there was insufficient evidence to connect Petitioner to the firearm because it was located in an apartment where multiple individuals lived. (Id., Doc. No. 195 at 4: Tr. of Sent'g Hrg.). The parties acknowledged, however, that the firearm enhancement did not impact the guidelines range because Petitioner was not eligible for "safety valve" relief. (Id. at 4-5). This Court sustained Petitioner's objection, calculating a guidelines range of 87 to 108 months in prison, but recognized that the range "would be trumped by the 120 month mandatory minimum . . . unless . . . the defendant [was] arguing that the safety valve applies." (Id. at 5). In response, defense counsel stated, "No, Judge, I believe that it would not apply in this case." (Id.). Consistent with the applicable mandatory minimum, this Court sentenced Petitioner to 120 months in prison. (Id.

at 7).

This Court entered judgment on May 5, 2011, and Petitioner filed an untimely notice of appeal on November 14, 2011. (<u>Id.</u>, Doc. No. 162: Judgment; Doc. No. 186: Notice of Appeal). On August 28, 2012, the Fourth Circuit Court of Appeals granted the Government's motion to dismiss and dismissed Petitioner's appeal. (<u>Id.</u>, Doc. No. 198). Petitioner placed the instant motion to vacate in the prison system for filing on September 15, 2012, and it was stamp-filed in this Court on September 20, 2012. In the motion to vacate, Petitioner claims that defense counsel was ineffective for (1) failing to argue for application of the safety valve, (2) failing to object to the firearm enhancement, and (3) failing to argue for application of retroactive amendments to the crack cocaine guidelines and the Fair Sentencing Act of 2010. (Doc. No. 1-1). On December 2, 2013, this Court entered an Order for the Government to respond and, after receiving extensions of time, the Government filed its Response on March 31, 2014.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and the Government's Response, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. <u>See</u> <u>Raines v. United States</u>, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

A. Petitioner's claim that defense counsel was ineffective for failing to assert Petitioner's entitlement to safety-valve relief

Petitioner first contends that defense counsel was ineffective for failing to assert Petitioner's entitlement to safety-valve relief. Under the safety-valve provisions, a defendant is entitled to a sentence in accordance with the applicable guidelines range without regard to any statutory minimum sentence when the following conditions are met:

(1) the defendant does not have more than one criminal history point;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon . . . in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.

U.S.S.G. § 5C1.2; 18 U.S.C. § 3553(f).

At sentencing, defense counsel and the Government agreed that Petitioner was not eligible for safety-valve relief and was therefore subject to the ten-year statutory mandatory minimum. The Government states in its response that although Petitioner appears to satisfy the first four requirements of the safety-valve provisions, the parties agreed that he was not eligible for relief because he never truthfully provided information to the Government regarding the offense. In support, Respondent has attached the sworn affidavit of Drug Enforcement Administration Special Agent Jim Billings, stating that Petitioner "declined the opportunity to debrief with law enforcement or to otherwise provide the Government with information concerning his participation in the drug conspiracy." (Id., Doc. No. 8-1, ¶ 3: Billings Declaration). This Court agrees with Respondent that, given Petitioner's refusal to truthfully disclose his criminal conduct, he was not eligible for relief under the safety valve. Therefore, because any objection would have been futile, defense counsel did not provide deficient performance by declining to assert that Petitioner was entitled to safety-valve relief at

sentencing, and this claim will be dismissed.

B.  Petitioner's claim that counsel was ineffective for failing to object to the application of the firearm enhancement

Petitioner next contends that defense counsel was ineffective for failing to "prepare[] any defense" to the application of the firearm enhancement.  (Doc. No. 1-1 at 6).  Petitioner's assertion that counsel did not prepare a defense to the firearm enhancement is incorrect, as the record shows that defense counsel <u>did</u> object to the application of the firearm enhancement, that the Government agreed with defense counsel's objection, and that this Court sustained the objection and declined to apply the two-level enhancement.  <u>See</u> (Crim. Case No. 5:09-cr-15, Doc. No. 195 at 4).  Moreover, the Court's ruling did not ultimately impact the sentence in light of the statutory mandatory minimum.  In sum, because defense counsel's performance was not deficient with regard to the firearm objection, the Court will dismiss this claim.

C.  Petitioner's claim that counsel was ineffective for failing to argue that the Fair Sentencing Act and retroactive guidelines amendments should have applied to the calculation of his sentence

Finally, Petitioner argues that trial counsel was ineffective for failing to argue that the Fair Sentencing Act and retroactive guidelines amendments should have applied to the calculation of his sentence.    The Fair Sentencing Act reduced the crack-to-powder cocaine disparity for purposes of the mandatory penalties under the Controlled Substances Act.  <u>See</u> <u>Dorsey v. United States</u>, 132 S. Ct. 2321, 2336 (2012).  Similarly, Amendments 706 and 750 lowered the quantity-based penalties for crack cocaine offenses to further reduce the disparity between crack and powder cocaine offenses.  Because Petitioner's sentence was based on quantities of powder

cocaine, however, the Fair Sentencing Act and guidelines amendments do not apply to him and his sentence remains unchanged. Because defense counsel was not ineffective for failing to raise these issues, the Court will dismiss this claim.

## IV. CONCLUSION

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: April 15, 2014

Richard L. Voorhees
United States District Judge